SACKET *against* MEAD, administrator of *Holmes.*

THIS was an action of debt on bond against the defendant, as administrator of the goods and estate of *Isaac Holmes*, jun. deceased.

The defendant pleaded in bar, that the estate was represented insolvent; that commissioners were appointed; that a time was limited for the creditors to exhibit and prove their claims; that the commissioners entered upon the duties of their appointment, gave due notice to the creditors, and, at the expiration of the time limited, made their report to the court of probate containing a list of all the claims by them ed and shewn to the administrator other estate not before inventoried, may sustain an action at law against the administrator for the recovery of such claim.

*Hartford,*
June, 1814.

Canaan
*v.*
Greenwoods
Turnpike
Company.

Where the estate of a deceased person has been represented insolvent, and settled as an insolvent estate, a creditor who had neglected to exhibit his claim within the time limited for that purpose, having discover-

*Hartford,*
*June, 1814.*

Sacket
*v.*
Mead.

allowed; that their report was accepted; that the estate proved to be, and ever since hath been, insolvent, and insufficient to pay the claims allowed; that the estate had been sold by order of the court of probate, and the avails paid over to the creditors, whose claims had been exhibited and allowed, in such manner and proportion as the law requires; that all the goods, chattels, credits and estate of the deceased had been thus administered; and that the bond in suit was never presented to the commissioners, nor allowed by them.

To this plea the plaintiff replied, " that subsequent to all the proceedings regarding the settlement of said estate, the defendant, as administrator on said estate, had shewn and exhibited to him other and further estate of the deceased not before discovered, and not before put into the inventory of said estate, of more value and greater amount than sufficient to pay all the just debts then due and demandable from said estate, which estate so shewn and exhibited to the defendant, was by him, as administrator on said estate, taken possession of and retained as the property of the deceased, and still remains in his hands unappropriated." The replication then proceeded to set out the condition of the bond, and alleged a breach, detailing the circumstances.

To this replication there was a special demurrer, assigning for cause that the replication was double and inconsistent. A joinder in demurrer closed the pleadings; and the question of law arising thereon was reserved for the opinion of all the Judges.

*R. M. Sherman* and *Chapman,* for the defendant, abandoning the causes of special demurrer, argued the case as standing upon a general demurrer. They contended, that where the estate of a deceased person has been represented insolvent, and has been proceeded with as an insolvent estate, an action at law will not lie against the administrator on a claim not exhibited to commissioners within the time limited for that purpose, although the plaintiff, after the expiration of such time, may have discovered property of the deceased not before inventoried sufficient to pay all the debts. Our statute regarding the settlement of insolvent estates(*a*) is an entire departure from the *English* law. The leading princi-

(*a*) *Tit.* 61. *c.* 1.

*Hartford,*
June, 1814.

Sacket
*v.*
Mead.

ple which it establishes is that of *average.* If the present action goes to defeat this primary object, it ought not to be sustained. It is clear that no average can be made without ascertaining precisely the amount of debts, of property, and of expenses of settling the estate. This can be done only by commissioners. The various questions necessary to be decided in order to strike an average could never be brought before a jury.

The legislature have expressly prohibited all process at law against an administrator on an insolvent estate while the same is depending in the court of probate.(a) The object of this prohibition is to prevent a waste of the estate by litigation in the common law courts. Such expenses absorb the estate wantonly and uselessly. Here the maxim peculiarly applies, *Interest reipublicæ ut sit finis litium.* The cases of *Nelson* v. *Hubbel,* 2 *Root* 421. and *Leavenworth* v. *Jones,* 2 *Root* 423. are in point to establish the principle contended for by the defendant.

It is immaterial by whom the property is discovered. As soon as it is shewn to the administrator the bar is removed, so as to let in creditors who have not exhibited their claims, to prove them before the commissioners, and to receive their average ; also to let in other creditors with them, if the estate be sufficient, to a further dividend. Then all the creditors will receive the same amount. This course is in perfect accordance with the principles of our system. But it would essentially violate those principles to sustain a suit against the administrator, on the original cause of action, without the intervention of commissioners.

But it will be said, that the administrator may refuse to inventory the new discovered property ; and in that case, shall the creditor be without remedy ? No ; let him sue on the probate bond, and assign the neglect of the administrator as a breach. The rule of damages will be the amount of the property ; and the sum recovered will be disposed of in the same manner as the avails of the property would have been, if the administrator had done his duty.

*Sherwood* and *N. Smith,* contra. There is no question but that the plaintiff has a valid and just claim, and that the

(a) *Tit.* 61. *c.* 1. *s.* 4.

*Hartford,* administrator has assets.   And though the plaintiff's claim
June, 1814. may have been barred by the limitation, yet by the discovery
of property not before inventoried he has since brought him-

Sacket
*v.*
Mead.

self within the saving clause of the statute,(a) and the bar is
removed.   Then why should he not recover ?  It is said, this
action is not the proper remedy.   The objection against it is,
that it goes to defeat the principle of *average.*   But how is
this made out ?  The administrator stands on precisely the
same ground with regard to this creditor, that he did with
regard to the creditors in general when he first took upon
himself the administration.   If he apprehends that the estate
may still be insolvent, he may represent it so now as well as
in the first instance, and have commissioners appointed.   He
may now as well as then be protected from a judgment against
him for the whole claim.   But the new discovered property
may render the estate solvent ; and if the administrator, con-
scious that it is so, no longer treats it as an insolvent estate,
why should he not be liable ?  Why should not a creditor,
who has a just claim which is not barred, be permitted to sue
for it, and recover the whole ?

Further, the principle assumed by the defendant, if admit-
ted, would only require a stay of execution until a new aver-
age could be made :  it would not defeat a right of recovery.

According to the course of proceeding proposed by the
plaintiff, the administrator may always be protected, if he
does his duty.   But suppose there should be a breach of duty
on the part of the administrator, how is the creditor, in the
course proposed by the defendant, to obtain redress ?  Suppose
the administrator should refuse to inventory new discovered
estate, what remedy has the creditor ?  It is said, he may sue
on the probate bond.   But no suit can be brought on the pro-
bate bond without the consent of the judge.   To him this
creditor does not appear to be a creditor, nor to have any in-
terest.   If he alleges that the administrator is in possession

(a) The limitation is in these words :  " And whatsoever creditor shall not
make out his or her claims with such commissioners before the full expiration
of the time set and limited for that purpose as aforesaid, such creditor shall
forever after be debarred of his or her debt."   Then follows the saving clause
in these words—" Unless he or she can shew or find some other or further es-
tate of the deceased, not before discovered and put into the inventory."   *Tit.*
61. *c.* 1. *s.* 6.

of new discovered estate, the administrator may deny it ; and will the court of probate then proceed to try the question ?

But waiving difficulties of this nature, suppose a suit to be brought and sustained on the probate bond ; what advantage would such a suit have over the present ? The administrator would stand on no better ground. It would be no better for the creditor.

*Hartford,*
*June, 1814.*

Sacket
*v.*
Mead.

BALDWIN, J. This record presents the claim of a creditor, on an estate which had been proceeded with and settled as insolvent, who had not made out his claim with the commissioners, before the expiration of the time limited, and now rests his title to recover, on shewing further estate not before discovered or put into the inventory.

The action is against the administrator in common form, upon the debt thus barred. In bar of this action, the administrator pleads the settlement of the estate as an insolvent estate, in the court of probate ; and the neglect of the plaintiff to make out his claim with the commissioners, before the expiration of the time limited.

The plaintiff replies, that after the settlement in the court of probate, other estate not before inventoried, was shewn to the defendant, and came to his hands as administrator on said estate, and still remains in his hands as the estate of the deceased unappropriated, more than sufficient to pay all the debts against said estate ; and then points out the nature of his claim, and that the administrator had notice of it.

To this replication the defendant demurs, and the plaintiff joins in demurrer.

The question of law is reserved by the superior court for our advice.

The pleadings close in a special demurrer, on the ground of duplicity ; but, as that point was abandoned in the argument, it is unnecessary to notice it.

Whether the plaintiff in such case is entitled to recover is the only subject of enquiry.

A proper decision of this question, depends on the due construction of our statutes respecting the settlement of the estates of persons deceased.

On this subject certain leading principles are admitted by all. If the estate is solvent, all debts, without preference,

are to be paid in full ; and although the administrator may, on a solvent estate, for his own safety, obtain a limitation to the exhibition of claims, he is, notwithstanding such limitation, immediately liable to the suits of creditors.

Every estate is presumed to be solvent, and will be treated as such, until the administrator, upon a fair comparison of the amount of debts, with the value of property within his knowledge, shall represent it otherwise to the court of probate. When so represented, suits at law are stayed, during its pendency. The court limits a time for the exhibition of claims, appoints commissioners to adjust them, and on their report, the estate is distributed by an equal average. When an estate is thus settled, every creditor who has neglected to make out his claim with the commissioners within the time limited is forever barred of his debt : " unless he can shew estate of the deceased, not before discovered, or put into the inventory." If, then, the creditor can shew such estate, the bar is removed ; but the statute gives no direction with respect to the extent or mode of relief. The general principles of our system for the settlement of estates must then be our guide.

As to the *extent* of his relief, there is now, I believe, no diversity of opinion. If the estate discovered is sufficient to pay all the debts, whether exhibited before or not, the whole must be paid. If less is discovered than will discharge the whole, the creditor barred is entitled to so much as will make his equal to former dividends, and the remainder is to be equally divided upon all the debts. This course, I understand, has been sanctioned by judicial authority.

The *mode* of relief has hitherto been a subject on which our courts have differed. In the case of *Leavenworth* v. *Jones,* in the year 1789, on a similar state of pleadings, the superior court adjudged the replication sufficient, and that the plaintiff recover the amount of his debt. Their judgment was reversed in the supreme court of errors, on the ground, that an administrator on an insolvent estate, which appears to have been settled in the court of probate, is not liable to any suit, except for neglect, and misconduct in the settlement, specially set forth in the plaintiff's declaration. This construction, it appears to me, entirely defeats the saving of the statute ; for it is not often contended on the discove-

Hartford,
June, 1814.

Sacket
v.
Mead.

ry of new estate, that the administrator has been guilty of neglect or misconduct, and the settlement on record may appear fair and complete. Let the estate discovered, then, be ever so great, the administrator on the reasons given, is protected from all suits.

The case of *Nelson* v. *Hubbel*, 2 *Root* 421., discloses facts, which show, that the plaintiff was not entitled to recover under the saving clause; for the estate claimed, as the basis of his right, had been discovered by the administrator, and inventoried, and distributed in the settlement recorded, long before any discovery or claim by the plaintiff. He could not, therefore, recover on any principle; and so was the judgment of the court. The reporter, indeed, seems to doubt whether the mode of relief pursued in that case was proper; and suggests that after causing the administrator to inventory the new estate, the *creditor* ought to move the court of probate to open the commission for the examination of his claim. Others have contended, that the only remedy is by suit on the probate bond. Others again, that a new administration *de bonis non* is the proper course. As I know of no judicial decision which has pointed out the course proper to be taken in such case, we are at liberty to take that which is most analogous to our general system of settling estates.

The administrator, having proceeded in the court of probate to a final settlement of the estate as insolvent, and paid the dividend, the estate is no longer pending before the commissioners. Their powers have ceased. All proceedings are at an end, unless further estate is shewn to the administrator. When this is done, after such final settlement, the administrator must commence a new course of administration. He must inventory the estate, and compare its value with the amount of debts. If he finds it evidently sufficient to satisfy all the debts known to him, he may and ought to treat the estate thenceforth as solvent. But, as all the creditors who were barred, have an equal right to share in the new discovered estate, he ought to present the same to the court of probate, and, for his own safety, obtain a new limitation for the exhibition of claims. He may, also, on such comparison, if he deems it proper, represent the estate still to be insolvent, and obtain a new commission, as well as a new limitation. The *creditor* has no more controul of the estate thus discovered,

Sacket
*v.*
Mead.

or of the proceedings of the administrator in this stage of the settlement, than he had at the time the administrator was at first appointed. The administrator, having the controul, may treat the estate as solvent, and if he does so, will, of course, be liable to the demands and suits of the creditors in the same manner as every administrator on a solvent estate is liable. He may, at any time, arrest their progress, whenever he finds it necessary to represent the estate insolvent.

This is a plain and safe path for the administrator. It preserves entire the analogy of our system, and secures equally the rights of all.

In the case before us, it appears by the record, that the new discovered estate has long been in the hands of the administrator, and that it is sufficient to discharge all the debts in full. This being admitted, the only question is, whether a suit like this is a proper mode for the creditor to pursue to obtain his debt?

If the view I have taken of the subject is correct, I think it of course follows, that this action ought to be sustained. I need not contend, that this is the only remedy. An administrator may so conduct by refusing to receive and inventory the estate discovered, or by neglecting to proceed thereon, as to render himself liable on his bond. Perhaps, too, the creditor may, on the refusal or neglect of the first administrator, to administer on the new estate, obtain for himself administration *de bonis non.* But it is not a bar to this action, that other courses might have been pursued.

I am of opinion that the replication is sufficient, and that we advise accordingly.

SWIFT, TRUMBULL, SMITH and INGERSOLL, Js. were of the same opinion.

BRAINARD, J. dissented.

EDMOND, J. When an estate is represented insolvent, and so appears to the judge of probate, and proceedings have been regularly had thereon, the court of probate and administrator must proceed with it as an insolvent estate, until the settlement is finally completed. The mode of settlement is not to commence *de novo* upon any and every discovery of

other or further estate, not before discovered and put into the inventory. The admission of such a principle, would involve the settlement of estates in endless and insuperable difficulties. The statute makes it the duty of the administrator, to represent the condition and circumstances of the estate to the judge of probate. The judge appoints appraisers, to appraise the estate. He also appoints commissioners, who have full power to receive and examine *all* the claims of the several creditors ; allows a time for the purpose ; and if, on the report of the commissioners, the estate appears to be insolvent, the judge proceeds to order and set out to the widow (if any) such necessary household goods as are by law exempted from execution to be her own property, also her dower, and orders a sale of the residue of the estate. Out of the avails of such sale, the judge orders " full payment of the debts due to this state, and for sickness, necessary funeral expenses and incident charges of settling and selling the estate ; and the residue to be paid to the several creditors who have made out and evidenced their claims according to the direction of this act [that is, before the commissioners] in proportion to the sums to them respectively owing."(*a*) The commissioners are cloathed not only with full power, but exclusive and conclusive jurisdiction in relation to *all* claims against an insolvent estate, excepting only where the administrator " shall contest the proof of any debt at common law," and " except for debts due to this state, and for sickness and funeral charges," or where a person aggrieved by the doings of the commissioners shall file his motion praying for a review before the judge of probate and two justices, one of whom shall be of the quorum.(*b*) In all other cases of claims on an insolvent estate, the jurisdiction of the common law courts is expressly taken away by the 4th section of the same act, which provides, " that no process in law (except in the cases I have mentioned) shall be admitted or allowed against the executors or administrators of any insolvent estate so long as the same shall be depending as aforesaid." In this case, the plaintiff has not by his pleadings brought his case within any of the exceptions contained in the act to entitle him to process or judgment against the administrator, or sufficient to give jurisdiction to this court.

*Hartford,*
June, 1814.

Sacket
*v.*
Mead.

(*a*) *Tit.* 61. *c.* 1 *s.* 3.　　　　(*b*) *Ch.* 2. *s.* 2.

But should it be admitted, that the law is so, that when other or further estate is discovered and shewn to the administrator on an insolvent estate, sufficient to render the estate of the deceased solvent, the administrator is bound so to represent it, and proceed anew in the settlement; and that on such discovery of estate, when the administrator has taken it into his hands, every creditor may immediately institute a suit; yet the replication in this case is, in my opinion, insufficient. It contains no express allegation of solvency. The allegation on which the plaintiff relies to show that notwithstanding the proceedings had, as stated in the defendant's plea in bar, he is entitled to recover, is in these words: " That subsequent to all the proceedings regarding the settlement of the estate as stated in the defendant's plea in bar, the defendant or administrator had shown and exhibited to him other and further estate of the deceased, not before discovered, and not before put into the inventory of said estate, of *more value and greater amount than sufficient to pay all the just debts then due and demandable from said estate.*" This allegation is too vague and indefinite. An issue formed thereon, and found, would not necessarily lead to any useful result, or be a bar, if found for the administrator, against another suit brought by the plaintiff or any other creditor. The trial of such an issue would impose upon the jury the necessity of ascertaining with precision the amount in value of the estate of the deceased at the time of his death, at least of the new discovered estate, and, what would be much more difficult, the amount and value of all the just debts then due and demandable from the estate of the deceased; which could only be done by balancing books, making set-offs, adjusting claims, and doing the whole work of appraisers and commissioners; for without this, the issue could never be rightfully determined; and after all this enquiry, although they might find that the estate so discovered was sufficient for payment of debts, yet unless they found it of *more value and greater amount,* they must find a verdict for the defendant.

But were the pleadings correct, I can discover no necessity for supporting actions against administrators under the circumstances disclosed in this case. This administrator, it appears, has taken into his hands the new discovered estate; he is bound to represent the circumstances of it to the judge;

it remains with the administrator unappropriated, until the estate discovered is appraised, and debts ascertained, in a legal way. Whether the estate will prove insolvent, or otherwise, cannot be known. It remains depending; and no process for the recovery of debts is admissible. If the administrator is dilatory, or neglects his duty, for every breach of duty he is answerable on his probate bond. This is a remedy open to every creditor. But adopt the mode here contended for, and an administrator on an insolvent estate can never be safe. The instant that other and further estate is shewn to him, before he can examine the title, and represent the circumstances of it to the judge as the law directs, every creditor may institute his suit; the liquidation of all claims be taken from commissioners, the only proper forum in cases of insolvency; and the estate be wasted in defending against claims, which the administrator has authority neither to allow nor pay. For these and other reasons which might be given, I should advise that judgment be given for the defendant.

REEVE, Ch. J. The statute of this state has provided, that in case of insolvent estates, the creditors of every description, with the exception of debts due to the public, sickness debts, and funeral expenses, and costs of settling the estate, shall be paid *pari passu*. The excepted debts must be paid in full. That all creditors should be paid equally is a prominent feature of the statute; and this principle must be preserved entire; and any construction of the statute, or any proceeding thereon, which will defeat this principle, or embarrass it, ought to be rejected: for it is as much a principle that creditors should have the estate equally according to their respective debts, as it is that the executor should be answerable to the extent of assets, and no further; or that the whole estate, both real and personal, shall be applied to the payment of debts before a volunteer shall take any part of it.

That this provision may be carried into effect, the statute provides, that when the executor is apprehensive that the estate is insolvent, he may represent to the court of probate that this is the case. The court then appoints commissioners to examine the claims; which commissioners are a court for hearing, trying, and adjusting all the claims against the estate. They have final jurisdiction over such claims, except

*Hartford,*
June, 1814.

Sacket
*v.*
Mead.

that in case any person is aggrieved where the demand is above seventy dollars, he may have a review before the judge of probate and two justices *quorum unus,* and then their determination is final. It is apparent that every claim must be allowed by this tribunal; and no provision is made for the recovery of any debt until it is allowed. The principle, I think, is a clear one, that unless the debt is allowed by the commissioners, or the court of probate on a review, after an estate is represented insolvent, there can be no recovery of it. Unless there is something in the case which makes it to differ from ordinary cases, it will be admitted, that this must be the course; for no suit can be maintained at law, so long as the insolvent estate is pending before the court of probate, against any executor or administrator. In such case, it is the duty of the executor, under the direction of the court of probate, to sell the whole estate, real and personal. By this means it is ascertained what the estate produces; and the amount of debts is known by the allowance of commissioners. The court then strikes the average, and the executor is bound to pay to each creditor the sum allotted to him; and these proceedings render it certain that the executor has assets in his hands to this amount; and thus the business is closed, if nothing else takes place; and every creditor that has not exhibited his claim is barred from any demand against the executor, unless he can shew or find some other estate not before discovered or put into the inventory.

It has been supposed by some, that he who discovers this estate is alone entitled to the benefit of it, as a reward for his diligence. This idea is wholly inadmissible; for in many cases it would defeat the principle of average, whereas the object of the law is to preserve that principle entire; for the estate discovered might be sufficient to pay the whole debt of the discoverer, so that whilst *A. B.* and *C.* who exhibited their claims, receive only 50 cents on the dollar, *D.* the discoverer, receives 100.

Again, there may be a surplus after all the debt of *D.* is paid. Now, it is an established principle that a volunteer can never be entitled to any thing as long as a creditor remains unpaid. This surplus ought to be applied to the payment of the creditors who have received only 50 cents on the dollar. But how can this be accomplished? There is no way provided for them

to recover their debts but through the medium of the court of probate ; and whoever is in possession of the discovered estate, will, for any thing that I can conceive, retain it, unless some creditor appears that has not exhibited his claim. But there is no such creditor. They have all exhibited their claims, and have all received their average.

It may be said, that these creditors may sue the person who holds the estate as executor *de son tort*, and recover of him to the amount of assets. But I apprehend this never can be done ; and that no such character as executor *de son tort* can possibly exist in our law where the estate is insolvent. A suit against an executor *de son tort* is altogether a common law proceeding, and a recovery and judgment must be wholly governed by it. There can be no average judgment ; and he who first obtains judgment will be preferred to every other creditor in the same degree. If *D.* who did not exhibit, or *A.* who did, should sue the executor *de son tort*, who has assets enough to pay them, then they will take ; and thus *A.* and *D.* recover the whole demand out of the estate of the insolvent debtor, whilst *B.* and *C.* receive 50 cents on the dollar only. This defeats the principle of average ; and it is impossible to conceive of such a character, and his liability at common law, where the estate is insolvent, without perceiving that the unequal distribution of the insolvent debtor's estate will be the consequence in many cases, on the hypothesis that the holder of the property might be sued as executor *de son tort*.

I therefore conclude, that the true construction of the statute is, that when new estate is discovered not before inventoried, those who have not exhibited their claims have a right to have it applied to the payment of their debts as much as if they had discovered it.

Upon the idea of a reward for diligence, what would become of estate discovered by some person who was not a creditor ? The reasonable ground is, that when it appears that there is other estate, the creditors who lost all benefit of the estate by their neglect, may now avail themselves of this discovery. The words of the statute are such as furnish no ground to conclude, that all are to be excluded from the benefit of the estate unless they had made the discovery ; for the words are, that the creditor who does not exhibit his claim within the time limited shall be barred, " unless he or she can

shew or find some other or further estate of the deceased not before discovered and put into the inventory ;" or, in other words, prove that there is other estate which has not been inventoried. If he or she can do this, they are to have the benefit of the estate.

One question then arises, how? I ought to have observed, that the statute has provided that where a judgment is recovered against the executor the execution is stayed ; and when the proceedings are finished in the court of probate, this is to be averaged also, and execution goes out for the average. This provision must refer to judgments obtained against the executor before a representation of insolvency ; for no suit can be maintained, or judgment obtained, whilst the insolvent estate is pending ; and it cannot relate to a judgment obtained after the business is closed in the court of probate, because the statute provides, that the execution shall be stayed whilst the insolvent estate is pending, subject to the average made when it is closed.

Since, then, creditors are to have the benefit of the estate before volunteers, those who did exhibit, as well as those who did not, within the time limited, are entitled to the new discovered estate. The question is, how is this to be done?

If when the average was struck the statute had spent itself, and the proceedings must be at common law when new estate is found, then indeed no principle intended to be secured by the statute is violated. If the suit is brought, it must be brought before the common law courts ; and all the proceedings must be as the common law directs. The executor must pay debts according to the rank recognized by the common law, and must pay them in full without reference to any average ; and so judgment may be rendered for the whole debt, and the executor be bound to pay to the amount of assets in his hands to the proper claimant ; and if sued by a creditor, when he has paid all that has come to his hands, may plead *plene administravit.*

Upon this hypothesis, if the estate which is discovered is real, he will not be answerable ; for real estate is not assets in the hands of an executor. It will descend to the heirs, and in their hands will be liable to creditors of a certain description, *viz.* judgment and specialty creditors, but not to simple contract creditors ; and when they are paid, however

large the real estate may be which remains, the heir will hold it, not being liable to pay simple contract creditors, however numerous they may be.

Whoever attends to our statute respecting the estates of deceased persons must, I think, be satisfied, that the legislature never meant that the common law of *England* in these respects should be admitted. They formed a system on this subject utterly diverse from the common law ; and doubtless intended that it should operate upon all the property of the deceased. They meant to subject the real as well as the personal property, to the whole extent of it, to the payment of debts. They intended in every case of insolvency, that the estate of the insolvent should be equally distributed among the creditors. They meant to discard the idea, that one honest debt should be paid according to a certain established rank among debts, whilst another honest debt remained unpaid. They meant that a volunteer should in no case receive the benefit of the deceased's estate, either real or personal, whilst creditors were not paid through a deficiency of assets by reason of the volunteer's taking the estate. They meant in case of a representation of insolvency, that all the claims of creditors should be adjusted by commissioners, as the statute directs, before any demand should be enforced in a court of law.

I apprehend, that the mode contended for by the plaintiff must often defeat the intention of the legislature in every one of the before mentioned cases, and always in the last, if a creditor can enforce a claim in a court of law before that claim has been adjusted by commissioners.

There is no intimation in the statute, that upon new estate being discovered, it is the duty of the executor to represent the estate insolvent again. It has been already so represented ; and it is not the fact of its being insolvent that makes it necessary to take the steps pointed out by the statute, but its being represented so. It may in any event turn out to be a solvent estate, but if represented as insolvent these steps must be taken.

When we examine what the law requires of the executor or administrator, it will point out the method that should be adopted. They are directed to make an inventory of the deceased's estate, and penalties are inflicted upon them if they do not. They have also a power to represent the estate in-

solvent; and if they do, commissioners must adjust the claims, and as fast as they obtain knowledge of any estate they must inventory it. If, then, the estate is represented insolvent, commissioners are appointed, and the creditors all bring in their claims, they are adjusted, and an average is struck, and the creditors receive 50 cents on the dollar; then it is discovered that there is other estate; surely, it will not be contended, that the executor is not bound to inventory this estate, and for the benefit of the creditors who have received their dividend. Otherwise, it will be enjoyed by volunteers, whilst the creditors who are entitled to this estate are not paid. The executor, if he does his duty according to the tenour of his bond, will inventory this estate, as the statute directs that all such estate shall be sold by the executor for the payment of the creditors. It must then be applied to the payment of the creditors who have received a dividend of 50 cents on the dollar; for there are no other creditors. Having once represented the estate insolvent, there is no necessity of repeating the representation. If upon this, further estate being discovered, there is a creditor who has not before exhibited his claim, the bar on his claim by reason of his not having exhibited it before is now taken away; and this is all that is intended.

But has not the estate of the deceased been represented insolvent; and must not this as well as other claims be adjusted by commissioners? The words of the statute are very explicit, that when estate is represented to be insolvent, all the claims of creditors are to be adjusted by commissioners, and no suit can be maintained upon any until this is done. The mode of ascertaining all claims is prescribed by the statute; and all that is effected by the clause is letting in the creditors where there is new discovered estate who have not exhibited their claims, so that they may now have all the benefit of them. But there is no intimation that these claims can be enforced in any other way than all other claims are enforced. Nay, it is impossible that they should be; for all claims against the estate must be adjusted by commissioners, and these are claims. There can be no conceivable reason why these claims are not to be ascertained in the same manner that other claims are. As the executor was bound in the first instance to exhibit an inventory of all the estate that

came to his knowledge; so too is he bound to exhibit to the court an inventory of the new discovered estate. And as the estate has been represented insolvent, and as there may be creditors who have not exhibited their claims who now have a right so to do, the court will re-appoint the former commissioners, or appoint new commissioners, to examine any claims of creditors that may be exhibited. *D.* who never exhibited before, exhibits a claim, and it is allowed. The new discovered property is sold. *D.* is allowed as much as *A.*, *B.* and *C. viz.* 50 cents on the dollar, and there is yet money on hand. There is a second dividend among all the creditors, *A.*, *B.*, *C.* and *D.* of 25 cents on the dollar, perhaps 50 cents, and perhaps there is a surplus, which will be distributed to the volunteers who are by law entitled to it.

If this course is taken, the whole estate is operated upon in the manner the statute directs. No feature in our law is defaced. The whole estate, both real and personal, is applied to payment of debts; and volunteers take nothing unless there is a surplus after paying debts. The average law is preserved entire. There is no preference of one debt over another. Every claim is adjusted by the commissioners, and eventually settled in the court of probate without appeal, as it is most apparent it was the intention of the legislature it should be.

The question now arises, what is to be done when this estate is discovered? It certainly would be unreasonable to sue the executor without it is made known to him that such estate is discovered. Upon its being made known to him, it becomes his duty to inventory it; and if he does, every thing will be done of course as pointed out.

But if he refuses, what is the remedy? This is answered by enquiring what would be the remedy if the executor, after having proved the will, undertaken the trust, and given bonds to perform his duty, should refuse to inventory the deceased's estate, or any particular part of it? The remedy in such case is most apparent, by suit on the bond given to the court of probate, as trustee for the creditors and others interested.

How much is to be recovered upon the bond? *D.* who has discovered the estate, holds a demand of 100 dollars only, and the estate discovered is of the value of 1000 dollars.

This is also answered by enquiring what would be the rule of damages, if he had refused to inventory any of the estate? Unquestionably, it would be the value of the estate; which, when recovered, would go to the benefit of all the creditors, and, as the case might be, to the benefit of the heirs; for the suit when brought must be for the benefit of every person for whom the plaintiff was trustee. And the money when recovered is in the hands of the judge to be distributed *pari passu* among the creditors. In the case put, first deduct the costs, and give to *D.* the costs and an equal share with *A.*, *B.* and *C.*; and then make a second dividend, and, if the debts are paid, distribute to those volunteers to whom it belongs.

I cannot conceive of any reasonable objection to this mode of conducting the business. Why should the judgment be only to the amount of the debt of that creditor who brings forward the suit when there is more due from the executor to the creditors? Why should not the plaintiff recover all that is due? He is trustee for all the other creditors as well as for the one who brings the suit.

So too, where there is a refusal to inventory a part of the estate in the first instance, or the new discovered estate in the last instance, and yet there is no insolvency, nor representation of insolvency. Enough has been inventoried to pay all the debts, so that no creditor has any claim; but legatees have, who will be defeated in whole or in part, because the estate was not inventoried. One legatee procures a suit on the bond, whose legacy is 100 dollars. He recovers, and on the principle that there is estate of the value of 1000 dollars which ought to have been inventoried. Shall the recovery in this case be only 100 dollars? This would be the case if the suit was in his name; for that would be the extent of the injury to him. But it is in the name of a trustee, who is as much entitled for the *cestuy que trusts* to 1000 as to 100 dollars. Why then should he not recover the whole? To my mind it is apparent that he would; and I can conceive of no necessity of having as many suits as there are legatees.

This is precisely the course taken in a court of chancery, where, for good reasons, an executor is sometimes compelled to give bonds for the faithful discharge of his duty, and he fails; the bond is sued, and all for which he is liable to any person is recovered, where a single creditor is the applicant

for the suit. After recovery, notice is made out to all cred- *Hartford,* itors to produce their claims, which are settled in chancery ; June, 1814. and after paying the prosecuting creditor his actual costs, the rest is divided *pari passu* among the creditors or legatees, as the case is. And so, too, in all cases of equitable assets is the recovery, where it is necessary to go into chancery.

And why should not this be the case ? If the suit is only for the benefit of him who procures the suit, when a second cred- itor, or second legatee comes, there must be a second suit, and so on ; whereas the whole may be determined in one suit.

I can conceive of but one event in which it would be prop- per to institute a second suit ; and that is, when it is discov- ered that there has been a failure, which was not known at the time of the first suit. When the bond was sued, it was known that a span of horses, a coachee and library were not inventoried ; and further, there was a complete recovery. But it is now discovered, that there was a large quantity of plate which was not inventoried. In such case, there must be a second suit.

It is not necessary that any creditor should apply for a suit on the bond. The trustee, the judge of probate, may bring a suit on the bond, if he chuses ; and, upon the principle that no more is to be recovered than what a creditor is entitled to at whose request the suit is brought, nothing more could be recovered in such case. The money recovered on the suit is in the hands of the judge as trustee for those to whom it be- longs, and it is his duty to pay it out.

And in the case of new discovered estate, if the executor refuses to do his duty, and on the application of a creditor a suit is brought, the court must first indemnify the creditor by paying him his actual costs, then pay him an average sum equal to the sums received by the creditors who did ex- hibit ; and if any thing remains, make a second dividend among the creditors. In this way, every principle of law is preserved unhurt, and every object of the statute is attained, and complete justice is done.

Judgment for the plaintiff.