## BACON *against* PARKER.

At common law, and especially in this state, there can be no executor in his own wrong, where there is a rightful executor or administrator; because all the assets can be rendered available for the payment of debts, by a resort to such rightful executor or administrator.

Where there is neither will, nor administration, nor representation of insolvency, the inter-meddling of a stranger with the effects of the deceased, by taking them into his possession and claiming them as his own, or appropriating them to his use, will, generally, constitute such stranger an executor in his own wrong.

But many acts done by a stranger, which are ordinarily performed by an executor, may be explained; and if they appear to be mere acts of kindness and charity, they will not subject such stranger to the actions of creditors.

A verdict must be manifestly and palpably against the evidence in the cause, to authorise a new trial on that ground.

Therefore, where it was proved, by the admissions of *A*, that certain goods of the deceased, consisting of household furniture, were carried to his house, and, on the application of *B*, a creditor, *A* refused to administer on the estate of the deceased, or to furnish *B* with an inventory of the goods, saying that they ought to belong to him, as he had had a good deal of trouble; but it was also proved, that the goods were sent to *A's* house, not by his procurement, but by the minor daughter of the deceased, and that *A* put them into his garret, where they remained, without his having sold or used any of them, claiming that he kept them for such minor daughter; after a verdict for the defendant, in an action by *B* against *A*, as executor in his own wrong, it was held, that as the jury might have believed, from the evidence before them, that the controul of *A* over the goods, was induced, by motives of charity alone, rather than by any intention to embezzle them, or otherwise improperly withdraw them from creditors, the verdict was not so manifestly and palpably against evidence as to authorise the court to grant a new trial.

THIS was an action of *assumpsit* against the defendant, as executor of *Elizabeth S. Fowler*, deceased, for the recovery of 80 dollars, for the use and occupation of a dwelling-house, by her, in the city of *New-Haven.*

The defendant pleaded, That he was not, and never had been, the executor of said *Elizabeth S. Fowler*, deceased, nor ever administered any of the goods and chattels which were hers, at the time of her death.

The plaintiff, in his replication, averred, That the defendant, at the time of the commencement of this suit, was, and ever since has been, and still is, executor of the said *Elizabeth S. Fowler*, deceased, and has administered, as such executor, divers goods and chattels, which were hers, at the time of her death; on which issue was joined.

On the trial of this issue, at *New-Haven, October* term, 1836, before *Bissell*, J., the plaintiff claimed, that Mrs. *Fowler* died at his house, in the month of *December*, 1834; that at the time of her decease, she was indebted to him for the use and occupation of said house, as stated in his declaration; and that the defendant, immediately after her death, so intermeddled with, and appropriated to his own use, her goods and estate, as to become an executor in his own wrong, and so liable to pay the plaintiff's demand.

To prove these facts, he introduced *Isaac Houselander*, as a witness, who testified, that Mrs. *Fowler* had occupied the

plaintiff's house, where she died, in *December*, 1834 ; and that a few days after her decease, her goods, consisting of beds, bedsteads, chairs, tables and other household furniture, were removed, by some persons, from the house; that he saw the goods on a truck, but did not know whither they were carried; that not long after this, he went to the defendant's dwelling-house, in company with the plaintiff, and at his request ; that the plaintiff then asked the defendant, in presence of the witness, whether he had the goods of Mrs. *Fowler ;* that the defendant said that he had, and that they had been brought to his house; that the plaintiff then asked him if he would administer on her estate, to which he replied that he would not— that he had had a good deal of trouble, and he thought the goods ought to belong to him ; that the plaintiff then asked him, if he would let him have an inventory of the goods that he might administer ; to which the defendant replied that he would not.

On the part of the defendant, *Elizabeth Fowler* was introduced, as a witness, who testified, that she was the daughter of the deceased, and being a minor, lived with her, in the plaintiff's house, where she died, on the 14th of *December*, 1834 ; that two days after her mother's death, she procured the goods to be carried to the defendant's house, by his permission ; that she told him, the goods belonged to her mother; that he put the goods into his garret, where they remained until the time of trial ; that the defendant had not sold or used any of the goods, to her knowledge ; and that he claimed, that he kept them for her.    The value of the goods she estimated at 25 or 30 dollars.

Upon these facts, the plaintiff claimed, that the defendant was an executor in his own wrong, and had thus made himself liable to the payment of his demand.    The defendant claimed the reverse of this.    The judge charged the jury, that if they should find, that the defendant had taken and claimed the goods, as stated by *Houselander,* they ought to return a verdict for the plaintiff.    The jury found a verdict for the defendant.    The judge returned them to a second consideration ; but they adhered to their verdict ; which was then accepted and recorded.    The plaintiff moved for a new trial, on the ground that the verdict was against evidence; and the motion was reserved for the consideration of this court.

*Flagg*, in support of the motion, contended, 1. That the facts stated by the witness, *Houselander*, constituted the defendant an executor in his own wrong, within the rule of law that an executor in his own wrong is a person who intermeddles with the goods of an intestate, and does such acts as belong to the office of the executor, without taking out administration. 1 *Sw. Dig.* 451. 2 *Selw. N. P.* 10, 11. 28, 9. *Toller*, 37, 8. 462, 2. 467. 1 *Chitt. Gen. Prac.* 557.

2. That this witness being unimpeached, and there being no contradictory testimony, the verdict is against evidence, and a new trial must be granted. The testimony of *Elizabeth Fowler* does not go, in the least, to impugn or discredit *Houselander's.*

*Mix*, contra, contended, 1. That the common law rule of executor *de son tort*, was inapplicable here, and had never been adopted in its full extent. Where the estate is insolvent, as it was in this case, all the goods left by Mrs. *Fowler* being insufficient to pay the plaintiff's demand, no such character as executor *de son tort* can exist; for this would defeat the principle of average. *Sackett* v. *Mead*, 1 *Conn. Rep.* 25. per *Reeve*, Ch. J.

2. That a new trial will not be granted where the verdict was not manifestly and palpably against the weight of evidence. *Palmer* v. *Hyde*, 4 *Conn. Rep.* 427. *Talcott* v. *Wilcox* & al. 9 *Conn. Rep.* 134. Here, the evidence for the plaintiff consisted entirely of admissions, made by the defendant, under such circumstances as to give them little weight. 2 *Stark. Ev.* 34. Besides, the jury, from the evidence before them, may well have considered the defendant as doing merely an office of charity, in which case, he would not be liable. 1 *Sw. Dig.* 452.

Church, J. The 15th section of our statute "for the settlement of estates, testate, intestate, and insolvent," provides, "That if any person shall sell or embezzle any of the goods or chattels of any person deceased, before he or they shall have taken out administration and exhibited a true inventory of all the known estate, he or they shall stand chargeable and be liable to the actions of the creditors, and other persons aggrieved, as being executors in their own wrong." *Stat.* 203. *tit.* 32.

This provision is in affirmance of the common law on this subject, so far at least, as that law is not inconsistent with the general principles and policy of our law regarding the settlement of estates.

There are many acts of a stranger, which will constitute him an executor *de son tort ;* such as taking possession of the assets and converting them to his own use, paying debts or legacies, commencing actions, releasing debts, &c. ; and indeed, any acts done, which belong to the office of an executor, and furnish evidence to creditors of his being such. *Toller,* 37. 9 *Petersd. Abr.* 455. 1 *Sw. Dig.* 451. And yet there are other acts equivocal in their character, and such as are ordinarily performed by an executor, which, when explained, as they may always be, will appear to be mere acts of kindness and charity, and such as will not subject a stranger to the actions of creditors ; such as locking up and preserving the goods, ordering the funeral obsequies, making a schedule of assets, feeding the cattle, repairing the houses, &c. All these, and perhaps many other acts, may be necessary for the comfort of the family and the preservation of the estate, before a will can be found and proved, and before administration can, with propriety, be commenced. 2 *Bla. Com.* 507. 11 *Vin. Abr.* 207. *Harrison* v. *Rowley,* 4 *Ves. jr.* 216. 3 *Bac. Abr.* 22. *Toller,* 37. 9 *Petersd. Abr.* 455. 1 *Sw. Dig.* 452.

It was insisted, with much earnestness, at the bar, that whatever may be the principles of the common law, or whatever may be true under our own law, in the case of solvent estates ; yet if an estate be insolvent, there can be no such character as an executor *de son tort* consistently with the principle of average payment, adopted and regulated by our laws. This idea has been derived, we suppose, from a remark of the late Chief Justice *Reeve,* in the case of *Sackett* v. *Mead,* 1 *Conn. Rep.* 13. 25. ; which is, that " no such character as executor *de son tort* can possibly exist in our law, where the estate is insolvent."

It is generally true, at common law, that there can be no executor in his own wrong, where there is either a rightful executor or administrator ; and it can not readily be seen, how any necessity in this state can exist, in such case, for treating any person as such ; because all the assets can be rendered available for the payment of debts, by a resort to the executor or administrator ; both of whom, by our law, are made liable

by bond, for the faithful administration of the estate, and may have remedy against any stranger, who shall intermeddle therewith. It was in such a case, that the remark of the late Chief Justice was made ; and to such a case only can it be made to apply. In that case, there was an administrator *de jure*, and in fact ; and the estate had by him been represented and settled, as an insolvent estate. In the present case, there was neither will nor administration ; nor was there any representation of insolvency ; and without this, an estate in the legal course of administration is to be treated as solvent. Nor do any facts appear, which show, that the estate of Mrs. *Fowler* was insolvent in fact; and that it would have proved so, if it had been subjected to a legal settlement.

We can have no doubt, therefore, but the defendant might have been, upon proper and sufficient evidence, made liable as an executor in his own wrong. And whether such evidence existed and was adduced on the trial, it was the province of the jury to determine. The jury, by their verdict, decided, that the evidence was insufficient for this purpose ; and now a motion for a new trial is made, because this verdict, as the plaintiff claims, was against the evidence in the cause.

The power of granting new trials for verdicts against evidence, has been frequently exercised in this state, since the case of *Bartholomew* v. *Clark*, 1 *Conn. Rep.* 472. In that case, this power, it is believed, was first recognized here ; and the principles by which it should be exercised, were then established. "It should be exercised only in clear cases, which will rarely occur." The same principle is in effect repeated, in *Palmer* v. *Hyde*, 4 *Conn. Rep.* 426., and *Talcott* v. *Wilcox* & al. 9 *Conn. Rep.* 134. ; in the former of which it is said, that "A verdict must be manifestly and palpably against the weight of evidence, to authorize the granting of a new trial on that ground."

The case on the part of the plaintiff was attempted to be proved, by only one witness ; and this witness spoke only of facts derived from the confessions of the defendant : a source of proof not the most satisfactory.

That the defendant had in his possession a small amount of goods belonging to the deceased, was admitted ; and the material question before the jury was, what was the character of his possession ? Did he so deal with them, as within the princi-

*New-Haven,*
*July, 1837.*

Bacon
*v.*
Parker.

ples of law before stated, to render himself liable as an executor *de son tort?* There was no proof that they were brought to his house, by his procurement, or at his request. On the contrary, the daughter of the deceased procured them to be conveyed thither, not for the benefit of the defendant, that we know; but as the jury might well enough infer, for safe-keeping only. The mother had died; and, as we suppose, had left no other than this one minor daughter, whose duty it was, or who had the power, to take charge of this pittance of property, and preserve it for creditors. It was very proper, that the defendant, at the daughter's request, should take charge of and secure it; and if this was all he did, he did not thereby subject himself to the demands of creditors, as executor in his own wrong. It does not appear, by any certain evidence, that he interfered with it, in any other way; or that he ever, either before or since, converted it to his own use. He said, to be sure, if the plaintiff's witness correctly understood his confessions, that he thought the property ought to belong to him; but he did not distinctly make any claim to it as his. He refused to administer upon it. This he might well do; and indeed, it does not appear, that the defendant had any right to administer, either as being of kin to the deceased or as creditor. He refused to permit the plaintiff to take an inventory of the goods: but the plaintiff was neither an executor nor administrator, and could not legally claim a right thus to interfere with them.

Upon the whole; although we might, and probably should, on the trial of this action, with this evidence before us, have differed in opinion with the jury; yet we cannot say, that the case was so clear of all doubt, and the verdict so manifestly and palpably against the weight of evidence, as to call for so strong an exercise of judicial prerogative, or discretion, as the plaintiff claims at our hands. For the jury may have found very plausible reasons, from the evidence detailed upon this motion, for believing that the defendant's controul over these goods was induced by motives of charity alone, rather than by any intention to embezzle them, or otherwise improperly to withdraw them from the creditors of the deceased. We cannot, therefore, advise a new trial in this case.

In this opinion the other Judges concurred.

New trial not to be granted.